[No. 26449. Department Two. March 23, 1937.]

BARBARA POTTER, *Respondent,* v. ROBERT P. JAUREZ et al., *Appellants.*[1]

*Leo J. Brand* and *Shank, Belt, Rode & Cook,* for appellants.

*Allen & Wilkins (Edgar R. Rombauer,* of counsel), for respondent.

[1] Reported in 66 P. (2d) 290.

TOLMAN, J.—This is an action for personal injuries waged by one who was a passenger in an automobile against the owners and the operator of the car.

The case was tried to a jury, a verdict in favor of the plaintiff was returned, and from a judgment on the verdict the defendants have appealed.

A number of errors are assigned, but all, apparently, raise the same question, which the appellants in their brief describe as being solely the single question of whether or not there was an understanding between the parties, amounting to a contract which would bind the community, to the effect that the appellants would transport the respondent in their car upon a certain contemplated trip in consideration of the payment by her of such sum of money as they should determine to be her fair share of the expense of that trip.

The question was raised below by a challenge to the sufficiency of the evidence, by motion for a directed verdict, and by the motion for judgment n. o. v.

Concededly, the appellants are husband and wife, and the automobile involved was their community property. At the time of the injury, the appellant husband was driving the car, and the wife, the respondent, and another were occupants of the car.

The situation, as the jury was entitled to find it to be, was substantially as follows: Respondent, a young woman gainfully employed, desired to take advantage of the double holiday, which included Labor day in the year 1935, by then visiting what is known as the Skagit project being developed by the city of Seattle. She communicated with the city light department, which was in charge of the Skagit project, and was informed that the week end in question had been reserved for an excursion of a particular fraternal organization, and that a Mr. Dunn was the secretary of that organization and in charge of arrangements and

reservations for the trip. The respondent learned, or knew, that persons making the trip must supply their own transportation from Seattle to Rockport, and that the bus fare between those points would be five dollars, which sum she felt she could not afford to pay.

On the Monday preceding Labor day, the respondent went to the office of Mr. Dunn, and while waiting for him, she fell into conversation with Mrs. Juarez, who was there employed. Neither had ever met the other before, and up to that moment they were complete strangers. Respondent then informed Mrs. Juarez of her desire to make the trip and that she had no means of transportation from Seattle to Rockport, and further, that she would gladly share expenses with any one whom she might find who had room for her and who might be willing to take her to Rockport and return.

It appears that Mrs. Juarez and her husband, the appellants, had for some time intended to make the trip which we have described, expecting to drive their own car from Seattle to Rockport and return. They had made arrangements with two other young women to occupy the back seat of the car on the trip. Mrs. Juarez did not at that time inform the respondent of such intention or of such arrangements, but two days later she was advised by Mr. Dunn that he had found transportation for her; and at that time he introduced her to Mrs. Juarez, and a conversation occurred between them to the effect that one of the persons who had planned to make the trip with Mr. and Mrs. Juarez had dropped out, and, consequently, that Mr. and Mrs. Juarez would have room for respondent.

This being made plain, the respondent very clearly made known her desire to pay her share of the expenses of the automobile trip, and the jury could hardly do otherwise than find that a complete under-

standing was then arrived at by the two ladies to the effect that the respondent should so pay her share of the expenses. The matter of transporting the respondent as a passenger with them in their car was discussed between the husband and wife, before the arrangement was completed by the two ladies as just set forth, though the husband testified that he did not know that respondent had agreed to pay anything toward the expenses of the trip. Anyway, Mr. Juarez consented to accept the respondent as a passenger and did so accept her at the appointed time and place.

We omit all reference to evidence offered pro and con upon the question of negligence and the nature and severity of the injuries, because such evidence has no bearing upon the question now to be decided.

On the return trip, and after respondent had received her injury and as they neared the outskirts of the city of Seattle, according to the testimony of respondent, she asked Mrs. Juarez how much she owed or what her share of the expense might be, and Mrs. Juarez fixed the amount at one dollar, which the respondent then paid. It does not appear definitely whether or not this conversation and payment took place in the presence and hearing of the appellant husband, except that the husband testified:

"Why, just before we got to the house there was something said about expenses and she asked me—she asked us—I was driving and I didn't pay much attention to the conversation—when you are driving you can't hear what the people in the back of the car are saying unless they come deliberately up close to you—but something was said about 'How much do I owe you?' And I said, 'You don't owe us nothing.'"

There is other evidence which, it is argued, showed knowledge on the part of the husband of the arrangement which had been made by the ladies for payment,

but we consider it rather vague and inconclusive, and, though proper to go to the jury for what it might be worth, we do not consider it of sufficient value to warrant further extension of this statement.

■ What inferences might the jury reasonably draw from this state of facts? In answering this question, it must be borne in mind that substantially all of the testimony came from the lips of interested witnesses, and the jury was entitled to reject anything which appeared so contrary to common experience as to belie its truth.

■ As we have already said, the jury could hardly have done other than find that there was a complete and satisfactory understanding between the respondent and Mrs. Juarez which was arrived at some days before the trip was undertaken. Likewise, the jury could not doubt that the husband also knew in advance that the respondent was to have a place in their car for the entire trip. Might it not (in spite of his denial) have reasonably drawn the inference that the husband then knew that the respondent was to pay a share of the expense to be later agreed upon? We think it might. In such a matter, the wife would have no motive to deceive her husband, and since the subject was talked over between them, the natural inference is that all of the basic facts were disclosed by the wife to the husband. We think clearly that the jury had a right to find that the husband consented to the contract or agreement before its execution was entered upon.

Likewise, there is sufficient evidence of ratification by the husband even if he did not know of the arrangement made by the wife in advance. His testimony, which we have quoted, when read in connection with the testimony of the wife and that of the respondent, affords ample ground for the inference that, even if in ignorance of the arrangement up to that time, he

then, with the knowledge then received, ratified what the wife had before undertaken to do.

Appellants seem to rely greatly upon the case of *Eubanks v. Kielsmeier,* 171 Wash. 484, 18 P. (2d) 48, but that case is clearly distinguishable upon the facts. It appears from the opinion in that case that no agreement in advance to share expenses had been made, but there was a willingness (not disclosed) on the part of the prospective guests so to do, and also, perhaps, later there was an unaccepted offer from the guests to the same effect. The *Eubanks* case was correctly decided, but is not controlling here.

If one rides with a friend, or even with a stranger upon his invitation, having no preexisting understanding as to sharing the expense, he is a guest only, and will so remain even though he gratuitously offers some return favor such as paying for a meal, paying for gas, or providing the cigarettes. Such return of favors does not of itself destroy the relation of host and guest.

The statute (Rem. Rev. Stat. (Sup.), § 6297-1 [P. C. § 196-57a]), "does not purport to bar recovery by any but invited guests or licensees." *Forman v. Shields,* 183 Wash. 333, 48 P. (2d) 599.

Whether respondent was a joint adventurer with the appellants, a passenger with them for hire, or occupied a relationship partaking in some part of the nature of each, it is not necessary to here determine. It is sufficient that we cannot say, as a matter of law, that she was an invited guest within the meaning of the statute.

The judgment is affirmed.

STEINERT, C. J., HOLCOMB, BEALS, and ROBINSON, JJ., concur.