Argued January 5, reversed and remanded March 9, 1966

# SCOTT *v.* BOTHWELL
412 P. 2d 14

*Monte Bricker,* Portland, argued the cause for ap-

pellant. With him on the briefs were Reiter, Day, Anderson & Wall, Portland.

*Clifford B. Olsen,* Portland, argued the cause for respondent. With him on the brief were Franklin, Olsen, Bennett & DesBrisay, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

## GOODWIN, J.

Plaintiff recovered judgment against defendant for injuries sustained when the automobile in which both parties were riding struck a bridge abutment that was under construction on a portion of Interstate 5 in the state of Washington.

■ The action was tried to a jury under the theory that Washington law was applicable. Accordingly, we will not consider the potential questions that might have been presented if one of the parties had urged a different choice of law. Cf., *Gunderson v. Barry,* 239 Or 279, 397 P2d 196 (1964).

The Washington guest statute, RCW 46.08.080, provides:

> "No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have a cause of action for damages * * * unless the accident was * * * the result of said owner's or operator's gross negligence or intoxication * * *."

The principal issues in the case have to do with the application of the foregoing statute as it has been construed by the Washington Supreme Court. The

defendant, in moving for a directed verdict, and on appeal, insists that the plaintiff was a "guest without payment" as a matter of law. Other assignments of error challenge various instructions that were given.

Plaintiff and defendant were related by marriage, and had been friends for some twenty years. While plaintiff was visiting defendant in Portland, the parties discussed a recent report that an aircraft was missing in western Washington. Defendant was a member of a Civil Air Patrol volunteer group, some members of which owned Jeeps. Members of this group from time to time responded to requests for help in searching for missing aircraft. During the conversation, defendant remarked that he would probably be called to take part in the search. Plaintiff expressed a desire to accompany defendant in the enterprise, and, when the opportunity presented itself, defendant invited him to do so.

The accident occurred about 1:30 a.m. on a rainy night. The defendant became confused upon leaving a service station and entered a ramp leading to the wrong side of a four-lane divided highway which was still under construction. As the defendant's vehicle was proceeding north in what turned out to be one of the southbound lanes of travel, the vehicle ran into a bridge abutment.

■ Both parties testified that the plaintiff went along to help the defendant search for the missing plane. There was testimony that the parties anticipated that the defendant would be occupied with the operation of the Jeep over rough terrain after the search got under way, and that the plaintiff would act as the lookout. The defendant testified that this was the "main purpose" for which he invited the plaintiff

to accompany him. This testimony made a question for the jury upon the issues of "payment" and "motivation" necessary under the Washington guest statute to permit recovery for damages caused by ordinary negligence. There was, accordingly, no error in the refusal to direct a verdict for the defendant. See *Brown v. Gamble,* 60 Wash2d 376, 374 P2d 151 (1962); *McUne v. Fuqua,* 42 Wash2d 65, 253 P2d 632 (1953); *Scholz v. Leuer,* 7 Wash2d 76, 109 P2d 294 (1941).

■ In theory, the Washington courts announce a strict interpretation of "payment." In order to remove a passenger from the bar of the statute, (1) his presence in the vehicle must confer an actual or potential benefit in a material or business sense upon the owner, and (2) the transportation must be motivated by the expectation of such benefit. *Erickson v. Rossi,* — Wash2d —, 396 P2d 170 (1964), and cases cited therein.

■ In practice, however, as will be seen from *McUne v. Fuqua,* supra, and *Parrish v. Ash,* 32 Wash2d 637, 203 P2d 330 (1949), if the jury has been properly instructed and finds for the plaintiff, the verdict will not be disturbed so long as there is any evidence of benefit and related motivation.

A possible explanation of the Washington rule as it has worked out in practice may lie in the history of the Washington guest statute. Before 1957 the statute limited nonpaying guests to recovery for intentional torts. Since it was virtually impossible for a guest passenger to prove that a host driver had intentionally wrecked his automobile, the courts construed the statute "strictly" against defendants by making it relatively easy for juries to find "payment." In 1957, the statute was amended to enable a nonpay-

ing guest to recover for injuries resulting from gross negligence. There is no indication, however, that the Washington court has changed the standards by which it tests the evidence necessary to make out a jury question upon the issue of payment.

■ In the case at bar, the jury was correctly instructed according to Washington law that the benefit to the driver must be "a benefit in a material or business sense." The trial court then proceeded to instruct that the plaintiff would not be a guest if the presence of the plaintiff in the defendant's car tended to promote the mutual interests of both the plaintiff and the defendant and was for their common benefit. The trial court should have qualified "common benefit" by pointing out that such common benefit must be other than merely social. This instruction as given was inconsistent with the requirement of a material or business benefit. The unqualified instruction was an invitation to ignore the guest statute if the jury thought that both parties were engaged in an outing for their common pleasure or amusement. As held in *Erickson v. Rossi,* supra, the passenger on a trip undertaken for the mutual pleasure of the travelers is a social guest, rather than a paying passenger, even if such a passenger helps with the driving.

■ Since there was a very real question in the case at bar whether the plaintiff went along for purely social reasons, or as a favor to the defendant in a "material" sense, it was error to give the unqualified instruction that a mutually beneficial sharing of the ride would be outside the guest statute. *Hayes v. Brower,* 39 Wash2d 372, 235 P2d 482, 25 ALR2d 1431 (1951), cited as approving such an instruction, does not support it. The quotation in *Hayes v. Brower* from 4 Blashfield, Cyclopedia of Automobile Law and Prac-

tice 307, § 2292 (perm ed 1946), contains the qualification that the benefits to the driver be other than those incidental to hospitality and companionship.

■ The same challenged instruction also contained the unqualified statement that if the plaintiff's presence in the automobile was primarily for the attainment of some objective or purpose of the defendant, then the plaintiff would not be a guest within the meaning of the statute. This statement, like the comment on mutually beneficial enterprises, failed to point out that the defendant's purpose in offering the ride must be other than social. A driver might invite a passenger to accompany him for no reason except a desire for the company of the invitee. Even under the most liberal view of payment, such a person would not qualify as a paying passenger.

■ Another assignment of error challenges the giving of an instruction that the defendant, who admittedly had been driving on the wrong side of the four-lane highway, had violated RCW 46.60.020 and therefore was negligent as a matter of law. Whether or not he was negligent in taking the wrong road, the harm that resulted was not the kind of harm the risk of which made the statute applicable.

The purpose of RCW 46.60.020, which requires motorists to use the right-hand lanes of a divided highway, is to separate traffic moving in opposite directions, not to keep drivers from running off the road or from running into obstacles at the side of the road. Other statutes and rules of the road are intended, among other purposes, to encourage lookout and control. These rules were placed before the jury by proper instructions.

The plaintiff defends the challenged instruction

on the theory that if the defendant had been driving on the proper side of the highway he would not have collided with the bridge. The jury may have believed that the defendant failed to see highway-construction warning signs (which were facing the direction from which traffic was expected) and that he was not aware of the bridge construction, detours, and other relevant matters that might have helped him to avoid collision with the bridge abutment. But hazards of this character were not the evils which the statute was designed to remedy. This plaintiff was not, under the circumstances, within the class of persons sought to be protected by the statute.

There were jury questions whether the defendant was negligent in taking the wrong road and whether he was negligent in running into the bridge abutment. The statutory-negligence instruction amounted to a directed verdict on the issue of negligence.

In view of the errors noted in the instructions, the cause must be retried.

Reversed and remanded.